UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW DEANGELO, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:17 C 2571 |
| | ) Hon. Marvin E. Aspen |
| VILLAGE OF ROSEMONT, DANIEL VEACH, JOSEPH ALBANDIA, and MONTERREY SECURITY CONSULTANTS, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Matthew DeAngelo filed this action against the Village of Rosemont (the "Village"), Officer Daniel Veach, Officer Joseph Albania (together, the "Officers"), and Monterrey Security Consultants, Inc. ("Monterrey"), asserting a claim under 42 U.S.C. § 1983 for unreasonable seizure and use of excessive force (Count I), as well as state-law battery (Count II) and malicious prosecution (Count III) claims. Presently before us is the Village and the Officers' motion for summary judgment on Counts I and II of Plaintiff's complaint.[1] For the reasons set forth below, we grant the motion in part and deny it in part.

**BACKGROUND**

On August 6, 2016, Plaintiff visited Adobe Gila's, a restaurant and bar located at MB Financial Park in Rosemont, Illinois.[2] (SOF ¶¶ 13–14, 32.) The Village contracted with

---

[1] For the purposes of this motion for summary judgment, we refer to the Village and the Officers as the "Defendants."
[2] Unless otherwise stated, the facts described herein are undisputed and culled from the parties' Local Rule 56.1 statements of material facts and the attachments thereto ("SOF"). (*See*

Monterrey to provide private security services at MB Financial Park. (SOF ¶ 32; PSAF ¶¶ 12–13; *id.*, Ex. 2 (the "Agreement") (Dkt. No. 55–2).) In the early morning hours of August 7, 2017, Plaintiff had an encounter with a female bartender at Adobe Gila's regarding a spilled drink. (*See* Dep. of Matthew DeAngelo ("DeAngelo Dep") at 39:1–47:3, SOF, Ex. D (Dkt. No. 46–1) at Pg.ID#: 395–97.) Upset after the encounter, Plaintiff intentionally knocked over a stack of napkins on the bar before returning to his group of friends with his drink. (*Id.* at 46:2–46:12.) Shortly after returning to his group of friends, Plaintiff was approached by a man wearing a black polo, who identified himself as a manager of Adobe Gila's, and several men wearing yellow shirts. (*Id.* at 47:4–48:6.) The man identifying himself as a manager asked Plaintiff to leave the premises. (SOF ¶ 17; DeAngelo Dep. at 47:1–49:13.) Plaintiff walked over to and stood by a stairway leading to the exit of Adobe Gila's. (DeAngelo Dep. at 49:14–49:18.) The individual who had identified himself as the manager and the men in yellow shirts again approached Plaintiff and asked him to leave. (*Id.* at 50:11–50:18.) Plaintiff asked for a moment to wait for his friends to catch up with him. (*Id.* at 50:13–51:1.) Then, five to seven men red in shirts, who Plaintiff believed to be Monterrey security guards, exited an elevator, approached Plaintiff, and instructed him to leave the bar immediately. (Pl. Resp. to SOF ¶ 18; DeAngelo Dep. at 31:3–33:10, 51:4–52:9.) Plaintiff again requested a moment to wait for his friends. (Pl. Resp. to SOF ¶ 18; DeAngelo Dep. at 52:1–52:9.) Two of the men in red shirts then pulled

---

SOF (Dkt. No. 46); Pl.'s Resp. to SOF (Dkt. No. 54); Pl.'s Statement of Additional Disputed Facts ("PSAF") (Dkt. No. 55).) Because Defendants' did not file a response to Plaintiff's statements of additional facts, we deem all material facts set forth in Plaintiff's statement of additional facts admitted. *See* L.R. 56.1(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

Plaintiff from the railing, and all of the guards pushed him to the ground.
(Pl.'s Resp. to SOF ¶¶ 18, 27; DeAngelo Dep. at 52:24–53:21.) Plaintiff felt the men in red shirts hit and kick him while he was on the ground before placing him in handcuffs. (DeAngelo Dep. at 75:24–76:3, 86:15–21, 109:1–5.)

The men assisted Plaintiff off the ground and escorted him in handcuffs to an elevator and then to a room with two desks and a metal bench in the nearby parking garage of MB Financial Park. (SOF ¶¶ 19–20; DeAngelo Dep. at 54:15–57:6.) There were two male police officers in Rosemont Police Department uniforms present in the parking garage room when Plaintiff arrived. (SOF ¶ 20; DeAngelo Dep. 57:21–58:10.) The Rosemont Public Safety Incident Report lists the assigned officers as Daniel Veach and Joseph Albandia. (SOF, Ex. F (Dkt. No. 46–1) at Pg.ID#: 558.) Plaintiff did not see any police officers at Adobe Gila's before he entered the parking garage room. (SOF ¶ 22.) An arrest report prepared by Officer Veach indicates that he was dispatched to Adobe Gila's for a "Criminal Trespass to Property." (SOF, Ex. F at Pg.ID#: 557.) Officer Veach then, per the incident report that he prepared, spoke with Spiros Theodoropoulos, who stated that he had asked Plaintiff to leave Adobe Gila's several times asked Monterrey to remove Plaintiff when he refused. (*Id.* at Pg.ID#: 559.) Theodoropolous, however, has no recollection of these events, though he stated that calling the police would be typical practice where Adobe Gila's staff were unable to remedy a situation. (SOF ¶ 26; PSAF ¶ 3; Deposition of Spiros Theodoropolous ("Theodoropolous Dep.") at 24:6–24:13, 32:1–32:6, 39:5–39:8.)

The Officers searched Plaintiff's pockets, took photos of him, and asked such questions as his name, date of birth, and employment while Plaintiff remained handcuffed. (DeAngelo Dep. at 57:10–16, 116:1–19.) One officer took photos while the other officer wrote the ticket for

violation of the municipal trespass ordinance. (*Id.* at 60:5–60:18.) The Officers released Plaintiff after he paid the cash bond. (SOF ¶ 29; DeAngelo Dep. at 122:1–122:14.) Plaintiff remained in the parking garage room with the Officers for a total of ten to fifteen minutes. (DeAngelo Dep. at 60:2–60:4.)

## LEGAL STANDARD

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute "exists when there is sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in the non-moving party's favor as to any issue for which it bears the burden of proof." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (a genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true and draw all reasonable inferences in that party's favor. *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013); *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513. We do not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson*, 477 U.S. at 249–50, 106 S. Ct at 2511). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (citation omitted).

## ANALYSIS

Defendants have moved for summary judgment on both of Plaintiff's remaining claims: Count I of his complaint against the Officers for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 and Count II of his complaint against all defendants for state-law battery. Respectively, the parties dispute whether the Officers had probable cause to seize Plaintiff and whether Monterrey was the Village's agents such that the Village may be held vicariously liable for the Monterrey security guards' alleged battery.

### I.  COUNT I: EXCESSIVE FORCE AND UNREASONABLE SEIZURE

The Officers and the Village argue that summary judgment should be granted in their favor with respect to Plaintiff's § 1983 claim because the Officers did not use physical force against Plaintiff and had probable cause to believe Plaintiff had committed trespass. (Mem. ¶ 11; Reply (Dkt. No. 56) at 2.) In his response, Plaintiff abandons his excessive force claims against the Officers, and we therefore grant Defendants' motion for summary judgment on Count I insofar as it relates to Plaintiff's excessive force claim. (Pl.'s Resp. (Dkt. No. 53) at 2–3.) However, Plaintiff maintains his claim under 42 U.S.C. § 1983 that the Officers violated his "right to be free from unreasonable seizures . . . from state actors such as defendants Veach and Albania, as protected by the Fourth and Fourteenth Amendments to the Constitution of the United States." (Compl. ¶ 26; *see id.* ¶¶ 25–30; *see also* Pl. Resp. at 4–5.)

#### A.  Waiver

Defendants ask us to enter judgment in their favor on Count I in its entirety, but their opening brief addresses only Plaintiff's excessive force claim under 42 U.S.C. § 1983. (*See* Mem. ¶ 11 ("It is undisputed that no police officer struck plaintiff. No police officer threw him onto the floor. He was not handcuffed or escorted out of Adobe Gila's by any police officer. He

was issued an administrative violation ticket and was not charged criminally. Even viewing the facts in the light most favorable to plaintiff, no harm was done to plaintiff by any police officer. Plaintiff's 42 U.S.C. § 1983 action cannot stand.").) While their reply brief addresses Plaintiff's unreasonable seizure claim, arguments raised for the first time in a reply brief are generally waived. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited." (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003))); *see also, e.g.*, *Alma Garcia v. Draw Enters. III, LLC*, 2018 WL 6045206, at *7 (N.D. Ill. Nov. 19, 2018) ("But by failing to raise this argument until its reply brief, Draw forfeited the point for purposes of summary judgment.").

The waiver rule "is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). Despite Defendants' failure to address Plaintiff's unreasonable seizure claim in their opening brief, Plaintiff devoted most of his response brief to arguments concerning his unreasonable seizure claim. (Pl.'s Resp. at 2–5.) Defendants' reply brief, while again limited, merely responds to Plaintiff's arguments concerning his unreasonable seizure claim. (Reply at 1–2.) We find that Plaintiff is not prejudiced by Defendants' failure to address his unreasonable seizure claim in their opening brief, and Defendants have not waived their arguments regarding the same.

### B. Unreasonable Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. The "general rule" is that "'Fourth Amendment seizures are "reasonable" only if based on probable cause' to believe

6

that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192, 133 S. Ct. 1031, 1037 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213, 99 S. Ct. 2248, 2257 (1979)); *see Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). Officers have probable cause to seize an individual when the "totality of the circumstances known" would warrant a reasonable person believing the individual "had committed, was committing, or was about to commit a crime." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013) (citing *Abbott*, 705 F.3d at 714). "This standard does not require that the officer's belief turn out to be correct; it need only be reasonable." *Bailey v. City of Chi.*, 779 F.3d 689, 694 (7th Cir. 2015) (citing *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543 (1983)); *see also Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999) ("This flexible, commonsense approach does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." (citing *Brown*, 460 U.S. at 742, 103 S. Ct. at 1543)). Thus, "[t]he existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013); *see also Hurt v. Wise*, 880 F.3d 831, 841 (7th Cir. 2018) (same).

Defendant argue that the Officers had probable cause to seize Plaintiff because, based on the facts provided to them, "[c]learly there was probable cause to believe plaintiff was trespassing." (Reply at 2.) More specifically, Defendants argue the fact that Plaintiff "was brought to them by security guards after being removed from Adobe Gila's apparently against his will" establishes the Officers' probable cause to believe he had trespassed. *Id.*

Defendants have failed to show that no genuine issue of material fact remains as to whether the Officers had probable cause to seize Plaintiff. As Plaintiff points out in his response and statement of additional facts, that a "man was brought [the Officers] by security guards after

7

being removed from Adobe Gila's apparently against his will" does not tell the whole story. (Reply at 2; *see* Resp. at 5 (describing the conflicting accounts of the facts known to the Officers at the time of Plaintiff's seizure).) For example, Defendant Veach created an "incident report," provided by Defendants as an exhibit to their statement of material facts, which appears to give a different account of the totality of the circumstances known to the Officers when they seized Plaintiff:

> "Upon arrival, I spoke with Spiros Theodoropoulos who was working security at Adobe Gilas, 5455 Park Pl. He stated that he had asked the offender, named Matthew Isiah Deangelo to leave the bar several times, because he was being unruly. The offender refused to leave the bar and Spiros notified Monterey security to remove him from the Bar. The offender was relocated to the security holding facility at MB Financial Park, 5501 Park Pl."

(SOF, Ex. F at Pg.ID#: 559.)

Thus on the one hand, the Officers state that Plaintiff was simply brought to them in handcuffs, yet on the other hand they describe "arriving" at Adobe Gila's and having a discussion with Theodoropolous regarding Plaintiff's alleged trespass. (*Id.*; Reply at 2) This account is further complicated given that Mr. Theodoropoulos denies any recollection of this conversation with the Officers, and that the Officers now deny being dispatched to Adobe Gila's at all. (SOF, Ex. B at Pg.ID#: 366; PSAF ¶ 11.) Moreover, while the "incident report" provides that Plaintiff "refused to leave the bar," the police complaint states that he entered Adobe Gila's after being told to leave. (SOF, Ex. F at Pg.ID#: 560; *see also* PSAF, Ex. 1 (Dkt. No. 55–1).) These issues of fact go directly to the totality of the circumstances known to the Officers at the time they seized Plaintiff for trespassing and thus to whether they had probable cause to do so. Because these genuine issues of material fact remain, we deny Defendants' motion for summary judgment on Plaintiff's unreasonable seizure claim set forth in Count I of his complaint.

8

## II. COUNT II: STATE LAW BATTERY CLAIM

Defendants argue they are entitled to judgment on Plaintiff's state-law battery claim because the undisputed material facts show that the Officers did not attack Plaintiff. (Mem. ¶ 12.) Plaintiff concedes that there is no valid claim for battery against the Officers. (Pl.'s Resp. at 5.) Plaintiff contends, however, that the Village is liable for the actions of the Monterrey security guards under a *respondeat superior* theory. (*Id.* at 5.) Plaintiff argues that a contract between the Village and Monterrey to provide security services at MB Financial Park indicates that Monterrey, and thus its security guards, were the Village's agents. (*Id.*) Defendants contend that Plaintiff did not include the theory of *respondeat superior* in his complaint, and therefore Plaintiff cannot rely on the theory at this stage. (Reply at 3.) Defendants further urge that even if Plaintiff's *respondeat superior* theory is available, it is without merit because the Agreement stated that Monterrey was an independent contractor and thus not an agent for which the Village would have *respondeat superior* liability.[3] (*Id.* at 3–4).

### A. Waiver

As an initial matter, Plaintiff adequately put the Village on notice of his *respondeat superior* theory against the Village of Rosemont in his complaint. The doctrine of *respondeat superior* provides that a principal or employer may be held liable for the acts undertaken by its agent or employee within the scope of his agency or employment. *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 42, 983 N.E.2d 414, 427 (Ill. 2012); *Lang v. Silva*, 306 Ill. App. 3d 960, 972,

---

[3] Defendants again did not raise these arguments until their reply. However, given that the scope of their reply on the issue is limited to Plaintiff's argument regarding the Village of Rosemont's *respondeat superior* liability, Plaintiff has not been prejudiced and we find that Defendants have not waived their argument. *See Hernandez*, 634 F.3d at 913 (explaining that the waiver rule "is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument").

715 N.E.2d 708, 716 (1st Dist. 1999). Here, Plaintiff directly alleged a contractual relationship between the Village and Monterrey to provide security at the location of the incident at issue. (Compl. ¶ 7 ("Upon information and belief, the Village of Rosemont contracted with Monterrey Security Consultants, Inc., to provide security at various Village owned venues, such as MB Financial Park at 5501 Park Place in Rosemont, IL.").) Plaintiff also alleged that the Village was liable as a principal for torts committed by "its agents and employees," not just the Village of Rosemont police officers. (*Id.* ¶ 37 ("Defendant City Village of Rosemont is liable as a principal on a *respondeat superior* basis for all state law torts committed by its agents and employees against the plaintiff.").) Plaintiff thus gave Defendant "fair notice" of his claim and "the grounds upon which it rests"—that is, he adequately pleaded his claim for state-law battery against the Village of Rosemont on the basis that it is liable for the actions of Monterrey security officers as its agents. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).

### B. Vicarious Liability

We must next determine whether there is a genuine dispute of material fact as to whether, as Defendants argue, the Monterrey security guards were independent contractors and thus not the Village's agents. Plaintiff argues the Agreement establishes that the Monterrey security guards were agents of the Village. (*See* PSAF ¶ 13 ("Based upon that contractual arrangement, adopted pursuant to the Village of Rosemont's powers authorized under the 'home rule' provisions of the Illinois Constitution, the Monterrey Security employees who attacked and arrested Mr. DeAngelo were agents of the defendant Village of Rosemont at the time of the incident at issue in this litigation.").) While "[a]s a general rule, no vicarious liability exists for the actions of independent contractors," *Lawlor*, 2012 IL 112530, ¶ 42, 983 N.E.2d at 427 (citing

10

*Petrovich v. Share Health Plan of Ill., Inc.,* 188 Ill. 2d 17, 31, 719 N.E.2d 756, 765 (Ill. 1999)), liability is not precluded if the individual is also an agent, *Id.* ¶ 43, 983 N.E.2d at 427 (citing *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 13, 816 N.E.2d 272, 279 (Ill. 2004)). "The determination of whether a person is an agent or independent contractor rests upon the facts and circumstances of each case." *Lawlor*, 2012 IL 112530, ¶ 44, 983 N.E.2d at 427. While the right to control the manner in which the work is performed is the most significant factor, courts should also consider: "(1) the question of hiring; (2) the right to discharge; (3) the manner of direction of the servant; (4) the right to terminate the relationship; and (5) the character of the supervision of the work done." *Id.* (citing *Petrovich,* 188 Ill. 2d at 46, 719 N.E.2d at 772).

Considering the language of the Agreement in the context of these factors, no reasonable jury could find that Monterrey employees were the Village's agents. The Agreement explicitly defines Monterrey as an independent contractor and not an agent. (Agreement § 6.1 ("It is understood and agreed that Monterrey acts solely as an independent contractor in providing services pursuant to this Agreement. Nothing herein shall be construed to create the relationship of employer and employee, partnership, principal or agent or joint venture between Monterrey and Village.").) Further, the Agreement indicates that Monterrey, not the Village, retains control over the manner in which the work is performed. (*Id.* §§ 5.1, 5.3, 6.2 ("All employees of Monterrey shall be subject to the direction, supervision and control of Monterrey. . . . Monterrey is solely responsible for all acts and omissions of Monterrey agents and employees in providing services under this Agreement . . . Monterrey shall be solely responsible for all means, methods and techniques employed in providing security services pursuant to this Agreement.").) Specifically, while the Village requests particular dates and places for security services, Monterrey oversees the scheduling of its employees. (*Id.* § 2.5 ("Monterrey shall be responsible

for the scheduling of security personnel at the times and locations requested by the Village to provide security services requested at a Village Event Venue.").)

With respect to the other factors, although the Village retains the ability to prevent a Monterrey employee from providing security services at a Village venue, the Agreement does not provide the Village with the right to wholly discharge a Monterrey employee from employment with Monterrey. (*See Id.* §§ 2.6, 7.3.) It is Monterrey, not the Village, that pays wages and administers benefits to Monterrey employees. (*Id.* §2.11 ("Except as otherwise expressly provided herein, Monterrey shall be responsible for all matters relating to the employment of security personnel assigned to providing services . . . .").) Monterrey also has responsibility for the "training, licensing, and certification" and the "proper appearance and conduct" of its employees. (*Id.* § 2.2.) Finally, Monterrey provides direct supervision of its employees while they are on duty. (*Id.* §§ 5.1–5.3, 7.2.) *See Dixon v. MB Real Estate Servs., LLC*, 2016 IL App (1st) 152329-U, 2016 WL 3177987, ¶¶ 15–20 (1st Dist. June 7, 2016) (holding that security guard was an independent contractor where contract between security company and defendant identified guards as independent contractors and security company paid salaries and benefits, provided guards with training and licensure, and scheduled and assigned supervisors to oversee guards); *Amigo's Inn Inc. v. License Appeal Comm'n of City of Chi.*, 354 Ill App. 3d 959, 966–67, 822 N.E.2d 107, 114–15 (1st Dist. 2004) (finding that bar security guard was an independent contractor where bar did not directly pay, train, or provide uniforms or assignments to guards although guards took direction from bar manager while on duty).

In sum, viewing the evidence in the light most favorable to Plaintiff, there exists no dispute of material fact that Monterrey employees were not the Village's agents. Therefore, the Village cannot be liable for the actions of Monterrey employees on a *respondeat superior* basis.

Because no reasonable jury could find that the Village was liable on a *respondeat superior* basis for the actions of Monterrey employees and Plaintiff concedes the liability of Officers Veach and Albandia for the state-law battery claim, the Defendants' motion for summary judgment with respect to Count II is granted.

## CONCLUSION

For the above reasons, we grant Defendants' motion for summary judgment on Count I's excessive force claim and on Count II. (Dkt. No. 44.) Defendants' motion for summary judgment on Count I is denied as to Plaintiff's unreasonable seizure claim. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: February 11, 2019
 Chicago, Illinois